## UNITED STATES v. MITCHELL.

(District Court, S. D. West Virginia. September 25, 1917.)

COMMERCE ☞33—OFFENSES—INTERSTATE "TRANSPORTATION"—"COMMERCE."

The West Virginia intoxicating liquor law (Acts W. Va. 1917, c. 58) declares in section 31 that it shall be unlawful for any person to bring or carry into the state during any period of 30 consecutive days, or to carry from one place to another within the state, more than one quart of intoxicating liquors for personal use, and that it shall be unlawful for any carrier to knowingly carry for a passenger, or knowingly permit a passenger to carry, into the state, more than one quart of intoxicating liquor as personal baggage. Act Cong. March 3, 1917, c. 162, 39 Stat. 1058, 1069, making appropriations for the service of the Post Office Department, declares in section 5, after providing penalties for use of mails in advertising or soliciting orders for liquor in territory where by the local laws it is unlawful to so advertise or solicit liquor orders, that whosoever shall order, purchase, or cause intoxicating liquors to be transported in interstate commerce, except for scientific, sacramental, medicinal, and mechanical purposes, into any state or territory, the laws of which state or territory prohibit the manufacture or sale therein of intoxicating liquors, shall be punished, provided that nothing herein shall authorize a shipment of liquor into any state contrary to the laws of such state. Accused carried as personal baggage one quart of intoxicating liquor from Kentucky into the state of West Virginia, which liquor was intended for his own use. *Held* that, as "commerce" is defined as the exchange of merchandise on a large scale between different places or communities, or, as extended trade or traffic, accused was not guilty of a violation of Act March 3, 1917; his transportation of liquors into the state of West Virginia not amounting to interstate commerce, and the word "commerce" not being synonymous with "transportation," even though a transaction of magnitude would be unnecessary to violate the statute.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Commerce; Transportation.]

Walter Mitchell was indicted for violating Act Cong. March 3, 1917. Defendant discharged.

F. W. McCullough, Dist. Atty., of Huntington, W. Va., for the United States.

H. C. Warth, of Huntington, W. Va., for defendant.

KELLER, District Judge. This indictment, under what is known as the Reed Amendment, contained in the Act of March 3, 1917, the title of said act being, "An act making appropriations for the service of the Post Office Department for the fiscal year ending June thirtieth, nineteen hundred and eighteen,. and for other purposes," is submitted to me upon an agreed statement of facts.

The act consists of five sections, the last of which, after providing penalties for the use of the mails in advertising or soliciting orders for liquors in territory where, by the local laws, it is unlawful to so advertise or solicit orders for liquors, contains the following clause:

"Whoever shall order, purchase, or cause intoxicating liquors to be transported in interstate commerce, except for scientific, sacramental, medicinal, and mechanical purposes, into any state or territory, the laws of which state or territory prohibit the manufacture or sale therein of intoxicating liquors for beverage purposes shall be punished as aforesaid: Provided, that nothing

herein shall authorize the shipment of liquor into any state contrary to the laws of such state: Provided further, that the Postmaster General is hereby authorized and directed to make public from time to time in suitable bulletins or public notices the names of states in which it is unlawful to advertise or solicit orders for such liquors."

The agreed statement of facts is as follows:

"In the District Court thereof, September term, 1917. This day the defendant came and entered his plea of not guilty to the indictment in the above case. And now, after an examination of the evidence in the above case, F. W. McCullough, United States district attorney for West Virginia, in the Southern district thereof, and H. C. Warth, attorney for the defendant, Walter Mitchell, have agreed that the following statement of facts is correct, and hereby agree and do now submit this case to the court on the said statement of facts hereinafter set out, as being a question of law as to whether or not the said Walter Mitchell is guilty as charged in the indictment. It is hereby agreed between the attorneys in the above case that the following facts are true and correct:

"That the defendant's name is Walter Mitchell, that his place of residence is Republic, Kanawha county, West Virginia, and that he is 35 years of age; that on the 18th day of September, 1917, the said Walter Mitchell went to the town of Catlettsburg, in the state of Kentucky, that he there purchased one quart of intoxicating liquor, contained in two one pint bottles, from the Virginia Wine & Liquor Company, at Catlettsburg, in the state of Kentucky, that he paid the sum of $1 for the said intoxicating liquor, that the said intoxicating liquor was purchased by the said Walter Mitchell for his own personal use and consumption, and without any intention on his part of making a sale of said intoxicating liquor, and that the said liquor was never offered by said Walter Mitchell for sale at any time while the same was in his possession; that after purchasing said intoxicating liquor the said Walter Mitchell boarded a trolley car, commonly known as a street car, on the electric line of the Ohio Valley Electric Railway Company; that said railway company was then and there engaged in the transportation of passengers and baggage between the said state of Kentucky and the state of West Virginia; that the said Walter Mitchell paid the fare required to transport him from the town of Catlettsburg and state of Kentucky to the town of Kenova, and state of West Virginia, in the Southern district thereof; that said Walter Mitchell had in his possession as baggage at the time of boarding said trolley car, in the said town of Catlettsburg and state of Kentucky, the said quart of intoxicating liquor, and that he transported the same as personal baggage, on said trolley car, from the said state of Kentucky to the town of Kenova and state of West Virginia, in the Southern district thereof; that it was the purpose of said Walter Mitchell to make connection with No. 4, on the Chesapeake & Ohio Railroad, and, on leaving the said trolley car, to board said No. 4 on said Chesapeake & Ohio Railroad, and to go to his home at Republic, West Virginia, where he intended to store said intoxicating liquor for his own personal use and consumption; that said Walter Mitchell was not permitted to go to his home at Republic, West Virginia, but as soon as said trolley car arrived at Kenova, in the state of West Virginia, in the Southern district thereof, that the said Walter Mitchell was then and there arrested by Arthur J. Devlin, special agent of the Department of Justice of the United States; that, when arrested, said Walter Mitchell had the said intoxicating liquor in his possession as personal baggage, and that he was committed to jail to await the action of the grand jury; that the said Walter Mitchell had not brought into the state of West Virginia, in interstate transportation, any intoxicating liquor within 60 days, and that the said Walter Mitchell had never before been arrested and indicted for the transportation of intoxicating liquor in violation of the laws of West Virginia; that the said Walter Mitchell bought the said intoxicating liquor in the state of Kentucky with the assurance and understanding that he was entitled to do so under the statute of West Virginia permitting persons to transport into the state of West Virginia one quart of intoxicating liquor per month for personal use, and that said Walter Mitchell thought he was complying with the law in every respect when he purchased said intoxicating liquor in the state of Kentucky and

transported it into the state of West Virginia as personal baggage, and was informed and verily believed that he had a perfect right under the law to do so; and as evidence that the said Walter Mitchell was complying with the statute of West Virginia, and was not violating the prohibitory laws of West Virginia in any way, that section of the statute of the state of West Virginia, allowing persons the right to bring into said state of West Virginia, for their own personal use and consumption, one quart of intoxicating liquor per month, is herein set out as follows:

"'Sec. 31. It shall be unlawful for any person to bring or carry into the state, during any period of thirty consecutive days, or carry from one place to another within the state, in any manner, whether in his personal baggage, or otherwise, more than one quart of intoxicating liquors for personal use. If any person shall bring, or carry into the state, during any period of thirty consecutive days, or from one place to another within the state, in any manner, whether in his personal baggage, or otherwise, more than one quart of intoxicating liquors for personal use, he shall be deemed guilty of a misdemeanor, and upon conviction thereof, shall be fined not less than one hundred nor more than five hundred dollars, and imprisoned in the county jail not less than two nor more than six months. And upon conviction of the same person for the second offense under this act, he shall be guilty of a felony, and be confined in the penitentiary not less than one nor more than five years; and it shall be the duty of the prosecuting attorney in all cases to ascertain whether or not the charge made by the grand jury is the first or second offense; and if it be a second offense, it shall be so stated in the indictment returned, and the prosecuting attorney shall introduce the record evidence before the trial court of said second offense, and shall not be permitted to use his discretion in charging said second offense, or introducing evidence and proving the same on the trial. It shall be unlawful for any carrier operating in this state to knowingly carry for a passenger, or knowingly permit a passenger to carry into the state, or from one place to another within the state, more than one quart of intoxicating liquors as personal baggage. But nothing contained in this section shall be construed as requiring a carrier to carry, or permit a passenger to carry into the state, or from one place to another in the state, any intoxicating liquors as personal baggage. If any carrier shall knowingly carry for a passenger, or knowingly permit a passenger to carry into the state, or from one place to another within the state, more than one quart of intoxicating liquors as personal baggage, the carrier shall be deemed guilty of a misdemeanor, and upon conviction thereof, shall be fined not less than two hundred nor more than one thousand dollars. And a court of equity upon showing that a carrier has knowingly carried for a passenger, or knowingly permitted a passenger to carry into the state, or from one place to another within the state, more than one quart of intoxicating liquors as personal baggage, or through the want of due caution and care, has carried for a passenger, or permitted a passenger to carry into the state, or from one place to another within the state, more than one quart of intoxicating liquors as personal baggage, shall have jurisdiction to entertain such suit and to enter such decree and take such proceedings as are provided for in section seventeen.'"

It is to be noted that the sanctions of this act are directed against the ordering, purchasing, or causing intoxicating liquors to be transported in interstate commerce, and this brings us to inquire what is meant by interstate commerce. Webster defines commerce as:

"The exchange of merchandise on a large scale between different places or communities; extended trade or traffic."

And he gives as synonyms the following words:

"Trade; traffic; dealing; intercourse; interchange; communion; communication."

Of course, the question of the magnitude of the commercial transaction is unimportant, considered from a legal standpoint where the

commerce is prohibited; but that the phrase "interstate commerce" necessarily connotes interstate commercial dealings originating in one state and extending to another I am fully persuaded. I am quite as fully persuaded that, in the case at bar, no transportation of liquor in interstate commerce has been shown, but that, on the contrary, a mere interstate transportation of goods no longer in commercial existence, so to speak, has taken place in strict accord with the laws of the state to which such goods were transported.

"Commerce" is not a term synonymous with "transportation," and where an owner transports his goods personally from one state to another, not for purposes of trade, he is not engaging in commerce, and the statute does not apply. The indictment is doubtless good, and it is only the agreed facts that show that no conviction can be had upon it.

It is not necessary in deciding this case to consider the question whether Congress has power to regulate interstate transportation, where such transportation is not in commerce, because I do not find in the act any declared intention so to attempt to regulate or control such transportation; and it will be time enough to pass upon that question when, if ever, it arises.

It follows that the proofs do not support the charge in the indictment, and the defendant is discharged.

